UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | |
|---|---|
| **DIEGO HERNANDEZ-BALACAZA** | **PETITIONER** |
| v. | No. 5:25-cv-177-BJB |
| ADAM SMITH, ET AL. | RESPONDENTS |

\* \* \*

| | |
|---|---|
| **RAMON HERNANDEZ MARTINEZ** | **PETITIONER** |
| v. | No. 5:25-cv-178-BJB |
| ADAM SMITH, ET AL. | RESPONDENTS |

\* \* \*

| | |
|---|---|
| **ANDRES GONZALEZ-LOPEZ** | **PETITIONER** |
| v. | No. 5:25-cv-179-BJB |
| ADAM SMITH, ET AL. | RESPONDENTS |

\* \* \*

| | |
|---|---|
| **VICTOR MANUEL ALEJANDRO AVALOS TAMAYO** | **PETITIONER** |
| v. | No. 5:25-cv-182-BJB |
| ADAM SMITH, ET AL. | RESPONDENTS |

\* \* \*

| | |
|---|---|
| **ERNESTO GERARDO ZEPEDA RAMIREZ** | **PETITIONER** |
| v. | No. 5:25-cv-186-BJB |
| ADAM SMITH, ET AL. | RESPONDENTS |

\* \* \*

| | |
|---|---|
| **NOEL ISAI SAMAYOA** | **PETITIONER** |
| v. | No. 5:25-cv-190-BJB |
| ADAM SMITH, ET AL. | RESPONDENTS |

\* \* \* \* \*

## SUPPLEMENTAL BRIEFING ORDER

The Petitioners in the six immigration-related habeas cases captioned above contend that their pre-removal detention is unlawful because (among other reasons) the United States violated the Administrative Procedure Act. *E.g.*, Petition, Case No. 5:25-cv-177 (DN 1) at 6–7 (citing 5 U.S.C. § 706; *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983)). "By categorically detaining, denying Petitioner's release, and seeking to transfer him away from the district without consideration of his individualized facts and circumstances," one petition contends, the federal Defendants (ICE's Chicago field-

1

office director, the Secretary of Homeland Security, and the Attorney General) "have violated the APA." *Id.* at 7. Though not developed at length in the petitions, three main arguments support the claim that the detention is invalid as a matter of administrative process.[1] First, that the Government hasn't offered a bond hearing or other individualized determination that each Petitioner "is a flight risk or danger to the community." *Id.* at 7. Second, that ICE agents arrested each Petitioner without a warrant or probable cause (which, in their eyes, presumably would've offered at least some semblance of the individualized assessment available in a bond hearing). *Id.* at 8. Third, that the Government simply lacked statutory authority for its administrative action, which must therefore be held unlawful under the APA as "not in accordance with law." *Id.*

The Government, for its part, points to a purported Sixth Circuit custom of not considering "hybrid" habeas petitions and civil actions, given the suits' "distinct purposes and … unique procedural requirements." *E.g.*, Response to Show-Cause Order, Case No. 5:25-cv-177 (DN 9) at 1–2 n.2. Although the Government's briefing mentions administrative exhaustion, it doesn't otherwise respond to Petitioners' APA arguments—other than to request a briefing schedule if the APA arguments proceed. *Id.* Given that request and the importance of these APA issues to litigation across the country, the Court invites the parties to file, **no later than Dec. 9, 2025**, supplemental briefs addressing the following issues.

**1. Whether the APA applies.** A habeas writ may relieve "custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has suggested more than once, however, that the APA review may not apply in immigration-related habeas proceedings. *See Ardestani v. I.N.S.*, 502 U.S. 129, 133 (1991) (holding that fee-shifting under the Equal Access to Justice Act didn't apply to a prevailing party in a deportation proceeding because "[a]lthough immigration proceedings are required by statute to be determined on the record after a hearing …, we previously have decided that they are not governed by the APA.") (citing *Marcello v. Bonds*, 349 U.S. 302, 310 (1955) ("Unless we are to require the Congress to employ magical passwords in order to effectuate an exemption from the Administrative Procedure Act, we must hold that the present statute expressly supersedes the hearing provisions of that Act.")).[2] Although habeas

---

[1] This supplemental-briefing order doesn't address Petitioners' separate claims that constitutional and statutory violations independently justify habeas relief.

[2] *Ardestani* explained that *Marcello* recognized Congress' decision to place immigration proceedings outside the ambit of the APA.

> In *Marcello,* we held that Congress intended the provisions of the Immigration and Nationality Act of 1952 (INA), 66 Stat. 163, as amended, 8 U.S.C. § 1101 *et seq.*, to supplant the APA in immigration proceedings. Two years before the enactment of the INA, we had concluded that immigration

2

proceedings are distinct from those conducted under the Immigration and Nationality Act,[3] the Court reasoned that habeas cases concerning the interpretation and application of the INA nevertheless lie outside the APA's scope. The INA's reticulated scheme—specifically calibrated to the unique procedures and rules of immigration proceedings—displaced any force the APA's more general rules might otherwise exert on administrative decisionmaking in the immigration context. "Unless we are to require the Congress to employ magical passwords in order to effectuate an exemption from the Administrative Procedure Act," the Court explained, "we must hold that the [INA] expressly supersedes the hearing provisions of that Act." *Marcello*, 349 U.S. at 310.

The APA itself, moreover, provides that its remedies are available only when a plaintiff seeks review of "final agency action," and "there is no other adequate remedy in a court … subject to judicial review." 5 U.S.C. § 704. The alleged final agency action challenged here remains unclear. The Petitioners object to the Government's categorical decision to detain them pending removal proceedings without individualized review of their flight and safety risks. As they read the relevant statutes, the Government must offer them bond hearings. Two agency actions discussed by the parties, however, take a different view of 8 U.S.C. §§ 1225 and 1226 that frustrates access to such hearings. First, the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, which held that immigration judges lacked "authority to hold a bond hearing for an alien present in the United States who has not been admitted after inspection." 29 I. & N. Dec. 216, 216 (2025). Second, the DHS policy memorandum directing that § 1225(b)(2) displaces the discretion ICE

---

proceedings *were* subject to the APA. *Wong Yang Sung v. McGrath,* 339 U.S. 33 (1950). Congress legislatively overruled that decision almost immediately afterward in a rider to the Supplemental Appropriation Act, 1951. 64 Stat. 1044, 1048. In *Marcello,* we had to determine whether, in revising the immigration laws in 1952 and repealing the rider, Congress had reversed its previous position and reinstated the holding of the *Wong Yang Sung* case. We held that the INA "expressly supersedes" the hearing provisions of the APA in light of "the background of the 1952 immigration legislation, its laborious adaptation of the Administrative Procedure Act to the deportation process, the specific points at which deviations from the Administrative Procedure Act were made, the recognition in the legislative history of this adaptive technique and of the particular deviations, and the direction in the statute that the methods therein prescribed shall be the sole and exclusive procedure for deportation proceedings." 349 U.S., at 510.

*Ardestani*, 502 U.S. at 133–34.

[3] The same logic would appear to extend equally to the INA as later amended by IRRIRA—the Illegal Immigration Reform and Immigrant Responsibility Act of 1996—which supplied the statutory authority (codified at § 1225(b)(2)) on which the Government relies here.

was previously thought to possess, under § 1226(a), to release "an alien … pending a decision on whether the alien is to be removed." But it's not clear which action or actions (including perhaps some not mentioned above or even expressly stated in the petitions) that the Petitioners ask this Court to set aside under 5 U.S.C. § 706—the judicial-review provision of the APA.

If the Petitioners do indeed mean to challenge those two agency actions, that raises the question whether a habeas proceeding—ostensibly to review individual detention decisions pending removal—is a suitable vehicle to review agency action that sits well upstream of any one person's detention. Particularly because any "final order of removal," along with BIA decisions reviewing such orders, aren't subject to review in district court under the APA, but instead in the courts of appeals under the modified Hobbs Act procedure. *See* 8 U.S.C. § 1252. That statutory scheme at least arguably suggests that APA review is unavailable in a district court exercising habeas jurisdiction under 28 U.S.C. § 2241. The parties may wish to address this question. As well as the related questions of what agency actions Petitioners contend are subject to APA review, and the ways in which those actions are final. The Court is unaware whether other decisions inside or outside the immigration context have scrutinized detention decisions under the APA in the course of considering habeas relief. If any party can cite caselaw illuminating these issues, that could greatly aid the Court's consideration of important arguments that have (perhaps understandably) received less attention than the constitutional and statutory questions at issue here and in district courts across the country.

**2. Remedies.** A related question concerns the relationship between typical APA relief (vacatur) and typical habeas relief (release). Petitioners appear to seek a combination of simple release from custody, a declaration that their detention is unlawful, and (if release is unavailable) a Court-ordered bond hearing. *E.g.*, Case No. 5:25-cv-179, Petition (DN 1) at 16 ("order Respondents to schedule a bond hearing"). Vacatur under the APA, however, is available only when an "adequate remedy," 5 U.S.C. § 704, is otherwise unavailable. One potentially plausible reading of the petitions would seek bond hearings as a necessary consequence of vacatur of the BIA or DHS actions—only to the extent the Court rules that release is *not* available. If the Government or Petitioners understand the request differently, however, the Court invites them to clarify the relationship of vacatur and release in these cases.

This complicated relationship between remedies, moreover, may relate to the Government's position that simultaneous requests under the APA and habeas are incompatible as a procedural matter. *E.g.*, Response to Show-Cause Order, Case No. 5:25-cv-177 (DN 9) at 1–2 n.2. As noted above, the Government hasn't yet argued that the APA simply doesn't apply here—only that resort to the APA can (or perhaps should or must?) be pursued in a separate civil action, given the unique timing and

4

procedural rules that govern habeas. *Cf. Ruza v. Michigan*, 2020 WL 4670556, *2 (W.D. Mich. Aug. 12, 2020), ("[C]ivil rights actions and habeas petitions have distinct purposes and contain unique procedural requirements that make a hybrid action difficult to manage."), *aff'd*, 2021 WL 3856305 (6th Cir. Apr. 7, 2021). Does any party take the view that APA review should not or may not proceed in this context?

In other cases before this Court, the Government has contended that some similarly situated detainees have received bond hearings—at least in form if not substance. In those cases, Immigration Judges conducted hearings but denied bond for lack of jurisdiction, following the Board of Immigration Appeals' decision in *Yajure Hurtado*. To the extent Petitioners ask this Court to order that the Government offer them a bond hearing under section 1226(a) and 8 C.F.R. § 1236.1(d), *see, e.g.*, Petition at in No. 5:25-cv-179 at 16, it's unclear whether such a decision by an immigration judge to hold a bond hearing—but deny jurisdiction—would supply the process they seek; to the Petitioners, a seemingly foreordained jurisdictional ruling under *Hurtado* in a bond hearing would render any such alternative remedy a nullity.

To the extent Petitioners seek a bond hearing *and* a jurisdictional finding inconsistent with *Hurtado*, therefore, on what basis could this Court compel an immigration judge to proceed otherwise? Or would Petitioners instead have this Court conduct the hearing on the merits of their bond applications, notwithstanding 8 C.F.R. § 1236.1(d)'s assignment of that authority to the immigration judge? It's not clear how this Court could redress, after the fact, a decision by an immigration judge to deny bond in accordance with *Hurtado*. *See* 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). In other words, is a pre-removal bond hearing ordered and potentially conducted by a federal District Judge a plausible remedy grounded in the statute or Constitution? Or is simple release—to the exclusion of any individualized bond hearing—the only available redress for the lack of such an administrative hearing?

Benjamin Beaton, District Judge
United States District Court

November 26, 2025